**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0449n.06

**No. 08-5324**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 01, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE AT |
| SHUMPERT BRITTON, | ) | MEMPHIS |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| _____ | ) | |

**Before: BATCHELDER and COLE, Circuit Judges; and LAWSON,[*] District Judge.**

**DAVID M. LAWSON, District Judge.** On August 27, 2005, thirty-one-year-old Shumpert Britton was legally disqualified from possessing the handgun he was carrying with him due to a prior felony conviction. That fact would not have come to light, however, if two Memphis, Tennessee police officers had not engaged in some illegality of their own: attempting to arrest Britton and two of his friends without any semblance of probable cause. But Britton's pistol was not discovered during a search incident to his arrest. Instead, Britton dropped the gun while climbing a fence in an effort to flee the police. We cannot conclude that the discovery of any of the evidence used to convict Britton of being a felon in possession of a firearm was the product of an illegal arrest or

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

search, despite the regrettable conduct of the police officers. Therefore, we must affirm the district court's order denying Britton's motion to suppress evidence, which he challenges on appeal.

I.

At around 8:00 p.m. on August 27, 2005, Officers Eric Hulsey and Carlos Davis of the Memphis, Tennessee police department were patrolling in a neighborhood they characterized as a high-drug-traffic area. They had received a verbal report of a drug sale at the corner of Kyle and Oaklawn streets. Hulsey and Davis were not dressed in typical police uniforms because they belonged to the Tactical Apprehension Containment Team ("TACT") charged with apprehending high-risk felons and handling barricade situations, although they also performed regular patrol duties. They were dressed in black TACT uniforms with small police badges, and they drove a black unmarked van.

When the police officers were approximately one block away from the area of the reported drug sale, at an intersection of Kerr and Kyle streets, they noticed three African-American men whom they thought to be in their early twenties gathered in front of a small brick house on Kyle street. One of them was the defendant, Shumpert Britton. The men's exact position remains highly contested. The police officers claim that the three men were standing on the sidewalk in front of the house so as to impede pedestrian travel, although they admitted at the suppression hearing in the district court that there were no pedestrians in the vicinity. Several other witnesses, on the other hand, all testified that the group was standing either in the yard near the driveway or in the driveway

2

itself. The district court rejected the testimony of the police officers on this point and credited the testimony of the other witnesses.

The men in the yard explained that they were friends and had been standing and talking there for quite some time before the police arrived. The house there belonged to an uncle of one of the men, a man by the name of Ed.

Officer Hulsey, apparently casting about for a reason to detain the men, drove toward the group to arrest them for obstructing the sidewalk. He said that the men then started to "mov[e] about," and Officer Davis, who occupied the passenger seat, exited the van. Record on Appeal (ROA) Vol. 2, at 11. Davis commanded the men to "stop doing what they were doing [and] let [him] see [their] hands." ROA Vol. 2, at 12. Two out of three men complied and were apprehended by Hulsey (and were searched while lying with their faces down). Defendant Britton, however, started moving towards the front door of the house.

Davis followed Britton and yelled to him to "come back." ROA Vol. 2, at 13. But Britton started running toward the backyard of the house, with Davis giving chase. Britton reached a wrought iron fence leading towards the enclosed backyard, scaled it, and ran toward the rear of the yard toward another fence. As Britton climbed over the first fence, a silver object that appeared to Davis to be a gun fell from Britton's waistband to the ground. Davis entered the backyard through an open gate and apprehended Britton as he was struggling to get over the second fence and placed him under arrest. Together, Davis and Britton returned to a silver object, which turned out to be a loaded handgun.

3

Britton was arrested and charged with obstructing a highway or passageway, evading arrest, and unlawful possession of a weapon. Britton's two friends were charged with obstructing a passageway as well. Later, the state prosecutor dismissed all the charges against the three men. On December 19, 2006, a federal grand jury in the Western District of Tennessee returned an indictment charging Britton with one count of being a felon in possession of a firearm.

Britton filed a motion to suppress the firearm, and the district court conducted an evidentiary hearing. The court concluded that the officers lacked probable cause to arrest the three individuals for obstructing the sidewalk. The court held, however, that after Britton ran, jumped the fence, and dropped the pistol, Officer Davis reasonably concluded that a crime was being committed and therefore he had probable cause to arrest the defendant for evading arrest and unlawful possession of a weapon under state law. The court deemed it unnecessary to address the allegation that Davis's initial attempt at arresting the appellant tainted the police officer's actions leading to recovery of the gun on the basis that "the facts confronting Officer Davis at the time of the actual arrest were considerably different than those existing at the time the police van pulled to the curb at 1477 Kyle." ROA Vol. 1, at 56 n.4. The lower court also did not address the government's argument that the defendant abandoned the gun and therefore lacked standing to bring the motion. The defendant's motion for reconsideration was denied as well.

After the district court denied his motion to suppress, Britton entered a conditional guilty plea, reserving the right to appeal the court's adverse ruling on his motion to suppress. He was

sentenced to a thirty-month prison term followed by three years of supervised release. This timely

appeal followed.

II.

This court reviews the district court's factual findings from a motion to suppress for clear

error, and its conclusions of law, including the determination of probable cause, *de novo*. *United*

*States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (citing *United States v. Gross*, 550 F.3d 578, 582

(6th Cir. 2008)); *United States v. Williams*, 544 F.3d 683, 685 (6th Cir. 2008) (citation omitted). A

factual finding is clearly erroneous when the reviewing court "is left with the definite and firm

conviction that a mistake has been committed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir.

2009) (citing *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). When the

district court denies a motion to suppress, the evidence must be considered "in light most favorable

to the government." *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008) (quoting *United*

*States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc)).

The government argues that the defendant lacked "standing" to move to suppress the

evidence because Britton discarded the gun before he was apprehended. That argument must fail

for two reasons. First, characterizing the question as one of "standing" miscasts the issue. The

Supreme Court rejected the concept of "standing" in the context of the Fourth Amendment in *Rakas*

*v. Illinois*, 439 U.S. 128, 139-40 (1978). It is commonly acknowledged that "in determining whether

a defendant is able to show the violation of his . . . Fourth Amendment rights, the 'definition of those

rights is more properly placed within the purview of substantive Fourth Amendment law than within

that of standing.'" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas*, 439 U.S. at 140).

Eight years ago, this court recognized that "the concept of 'standing' has not had a place in Fourth

Amendment jurisprudence for more than a decade" and that "the matter of standing in the context

of searches and seizures actually involve[s] substantive Fourth Amendment law [in which] . . . a

defendant [must] prove a legitimate expectation of privacy as a prerequisite to challenging assertedly

unlawful police conduct." *United States v. Smith*, 263 F.3d 571, 581-82 (6th Cir. 2001) (quoting

*United States v. Sanchez*, 943 F.2d 110, 113 n.1 (1st Cir. 1991)).

A person who abandons his property does not have a legitimate expectation of privacy in that

property and therefore cannot assert any Fourth Amendment interest in it. *United States v. Robinson*,

390 F.3d 853, 873-74 (6th Cir. 2004) (noting that "[i]f property has been 'abandoned' . . . the Fourth

Amendment is not violated through the search or seizure of this property") (citing *United States v.*

*Tolbert*, 692 F.2d 1041, 1044-45 (6th Cir. 1982)). That point, however, leads to the second reason

for rejecting the government's "standing" argument: there is no evidence that Britton intended to

discard or disclaim ownership of the handgun. A finding of abandonment must be based on some

evidence that the defendant intended to renounce ownership of property. *Compare United States v.*

*Sanders*, 719 F.2d 882, 886 (6th Cir. 1983) (rejecting the idea that an airplane passenger abandoned

his suitcase upon arrival at the airport by not picking it up by reasoning that the passenger never

affirmatively disclaimed the suitcase and explained that she decided not to claim it immediately upon

arrival because she was not going straight home), *with Tolbert*, 692 F.2d at 1044-45 (holding that

Tolbert had abandoned her suitcase when she "insisted that she was traveling without luggage and

specifically disclaimed ownership of the bag in issue"). In this case, the record does not support the finding that Britton threw the gun down. Rather, the testimony suggests no more than that the gun fell from his person when Britton jumped the fence. There is no basis to conclude, therefore, that Britton did not have a legitimate expectation of privacy in the gun he was carrying.

Britton argues that the district court should have suppressed the evidence because his arrest was unlawful. He notes that there was no probable cause to arrest him for obstructing the sidewalk, and citing *State v. Holbrooks*, 983 S.W.2d 697, 703 (Tenn. Crim. App. 1998), he contends that Davis lacked probable cause to arrest him for evading arrest because the initial attempt to arrest was unlawful, and a reasonable officer could not have believed otherwise. He also insists that the mere possession of a firearm is not immediately incriminating, because possession of a firearm is not *per se* illegal in Tennessee, and the police officers did not know about Britton's criminal record until after the chase was over, citing *United States v. Gray*, 484 F.2d 352, 355-56 (6th Cir. 1973) (holding improper seizure of rifles during execution of search warrant for alcoholic beverages where it was not "immediately apparent that the rifles were evidence incriminating the accused") (internal quotation marks omitted), and *United States v. Szymkowiak*, 727 F.2d 95, 99 (6th Cir. 1984) (suppressing weapons seized during execution of search warrant for stolen television under plain view rationale because "the executing officers' probable cause to connect the seized weapon with criminal activity was neither 'immediate' nor 'apparent'"). Because the officers had no probable cause to arrest Britton for any of the crimes, he believes that the handgun should have been suppressed.

If the discovery of the handgun in this case were the product of an illegal arrest or search, then the exclusionary rule would prevent its use as evidence in the federal criminal proceeding against Britton. *United States v. Alexander*, 540 F.3d 494, 501-02 (6th Cir. 2008) (reaffirming that "[t]he exclusionary rule bars the admissibility of items seized during an unconstitutional search," and that "[t]he 'fruit of the poisonous tree' doctrine bars introduction of derivative evidence that is the product of the primary illegally obtained evidence or testimony") (citing *Weeks v. United States*, 232 U.S. 383 (1914), and quoting *Murray v. United States*, 487 U.S. 533, 536-37 (1988)) (internal quotation marks and alterations omitted). The handgun – and Britton's possession of it – came to light in this case through neither.

Britton dropped the gun while he was being chased. He was not then under arrest. The Supreme Court held in *California v. Hodari D.*, 499 U.S. 621 (1991), that an arrest does not occur until a police officer lays hands on a subject or the subject voluntarily submits to a show of authority. *Id.* at 626 ("The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not. . . . An arrest requires *either* physical force (as described above) *or*, where that is absent, submission to the assertion of authority."). A person fleeing from a police officer's show of force is not then under arrest. *United States v. Williams*, 949 F.2d 220, 222 (6th Cir. 1991). The gun was revealed in this case before the arrest occurred.

The gun was not discovered as the result of a "search." Rather, it was publicly exposed through the defendant's action, albeit inadvertently. "[U]nder the fourth amendment no

governmental 'search' occurs if the place or object examined is publicly exposed such that no person can reasonably have an expectation of privacy." *United States v. Eubanks*, 876 F.2d 1514, 1516 (11th Cir. 1989). Once the loaded handgun was dropped in a place where the defendant had no reasonable expectation of privacy, there is no sensible rule that would prevent the police officer from picking it up. "[T]he police cannot be reasonably expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public." *California v. Greenwood*, 486 U.S. 35, 41 (1988).

Britton makes the point that he would never have dropped the gun if the police did not provoke the chase by trying to detain him, which they had no legal right to do. It is true that officers Hulsey's and Davis's action in rousting Britton and his friends from their lawful gathering was unlawful police conduct that ought to be deterred. But the Supreme Court has never held that invocation of the exclusionary rule is justified by the use of unlawful police action by itself. In order to exclude evidence under constitutional doctrines of the exclusionary rule or the fruit of the poisonous tree, the defendant must show more than "the mere fact that a constitutional violation was a 'but-for' cause of [the police] obtaining [the] evidence." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006). "[B]ut-for causality is only a necessary, not a sufficient, condition for suppression." *Ibid.* "Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Ibid.* (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)) (internal quotation marks

9

omitted). It is plainly apparent that Britton's dropping the gun was inadvertent, a mere happenstance. There is no evidence that the police intended to provoke flight or a chase or otherwise exploited the circumstances to cause Britton to shed his possessions. Nor has Britton shown that he had a reasonable expectation of privacy in the area of the yard where the gun was exposed. Britton, therefore, has not established that the exclusionary rule applies to the facts of this case.

III.

Because the discovery of Britton's handgun was the result of neither an arrest nor a search, we cannot find that the exclusionary rule requires suppression of the evidence in this case. For that reason, we **AFFIRM** the order of the district court denying the motion to suppress the evidence in this case.