*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            *v.*                                        Nos. 08-1220/1221

ALEJANDRO SERRANO DOMENECH (08-1220);
WILLIAM SERRANO DOMENECH (08-1221),
                    *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 06-00245-1; 06-00245-2—Janet T. Neff, District Judge.

Argued:  January 13, 2010

Decided and Filed:  October 7, 2010

Before:  NORRIS, COOK, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Dennis Belli, Columbus, Ohio, Andrew P. Avellano, Columbus, Ohio, for Appellants.  Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:**  Dennis Belli, Columbus, Ohio, Andrew P. Avellano, Columbus, Ohio, for Appellants.  Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

        COOK, J., delivered the opinion of the court, in which GRIFFIN, J., joined. NORRIS, J. (p. 9), delivered a separate dissenting opinion.

_____

## OPINION
_____

        COOK, Circuit Judge.    Alejandro  and  William  Domenech  appeal  their convictions for multiple firearm and drug trafficking offenses, the inculpating evidence

1

for which came from a warrantless search of their motel room.  Because the Domenech brothers' legitimate expectation of privacy entitled them to suppression, we reverse.

## I.  Background

A man who called himself "Rogelio" rented Rooms 22 and 31 at the Green Acres Motel and filled out a registration card later described by officers as "full of nonsense." After noting suspicious activity at the motel, officers from the local sheriff's department and the Michigan State Police approached Room 22.  Two sheriff's deputies knocked on the door while Trooper Burchell from the state police went around behind the motel room and stationed himself behind the closed, frosted bathroom window of Room 22. When the officers knocked on the front door, Burchell saw the light turn on and observed a figure enter the room and lean over; but the frosted window prevented him from actually seeing any fixtures or the person in the bathroom.  Expecting (correctly) that the person in the bathroom was about to flush away evidence, Burchell opened the window and swung his flashlight at Alejandro.  The commotion prompted the officers at the front of the motel room to burst through the door and to find Alejandro and his brother William with two women, drugs, guns, and counterfeit currency.

After a state court suppressed the evidence found in the room as the result of an illegal search, the federal government charged Alejandro and William Domenech with possessing a firearm to further a drug trafficking crime, possessing a firearm as convicted felons, possessing with intent to distribute five or more grams of crack cocaine, possessing with intent to distribute marijuana, and possessing counterfeit currency.  The defendants jointly moved to suppress the fruits of the warrantless entry. At the suppression hearing, the government focused on the defendants' privacy expectation.  Although the defendants did not testify, they offered a transcript of one of the females' testimony from a prior hearing regarding the renting of the rooms.  The district court denied  suppression, finding that the Domenech brothers lacked an expectation of privacy in the motel room as they failed to demonstrate that they "were either the registrants or they were sharing the room with someone who was."

At trial, another female occupant testified regarding room arrangements, telling

the court that: Alejandro paid for the rooms and directed Rogelio to rent them for the group's use; the group spent the previous night in Room 41 (a double room) before Alejandro sent Rogelio to rent Rooms 22 and 31—Room 22 for William and 31 for Alejandro. All the participants were in Room 22 when the police arrived. Other relevant testimony described the Domenech brothers' state of undress at the time of police entry, possession of the room key, and the luggage in the motel room. At the close of the defense case, the defendants unsuccessfully renewed their motion to suppress, arguing that the evidence established their expectation of privacy in the motel room. The jury convicted the brothers on all counts and the court sentenced them to imprisonment with accompanying fines. This appeal challenges the district court's refusal to suppress the evidence. When reviewing a district court's denial of a motion to suppress, we apply de novo review to its legal conclusions and clear error review to its findings of fact. *United States v. Purcell*, 526 F.3d 953, 959 (6th Cir. 2008).[1]

## II. Analysis

### A. Reasonable Expectation of Privacy

"The Fourth Amendment generally requires police officers to obtain a warrant before searching or seizing persons, houses, papers, and effects. This constitutional protection also applies to hotel rooms." *United States v. Allen*, 106 F.3d 695, 698 (6th Cir. 1997) (internal quotation marks and citations omitted). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978). A defendant meets this burden, sometimes referred to as standing,[2] by establishing an expectation of privacy in the place searched and society's willingness to accept the reasonableness of this expectation. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property

---

[1] Oral argument yielded mootness concessions as to the other briefed issues.

[2] Although the parties use "standing" as a shorthand throughout their briefs, it is not the proper term in this context. *See United States v. Britton*, 335 F. App'x 571, 574 (6th Cir. 2009).

law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 143, n.12.  When determining the legitimacy of a defendant's subjective expectation of privacy, we consider all of the facts and circumstances of the case, and "no single factor invariably will be determinative" in deciding the reasonableness of asserted privacy expectations. *United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001) (internal quotation marks omitted).

Although accepting that the brothers possessed a subjective expectation of privacy in the room, the government labels that expectation objectively unreasonable in light of the criminal activity conducted there, the use of an agent to rent the rooms, and the agent's use of an alias.  Finding that none of these circumstances—individually or cumulatively—defeat the reasonableness of the privacy expectation here, we reverse.

### 1.     Criminal activity

This court explicitly rejected the principle that criminality undermines privacy expectations in *United States v. Washington,* holding: "the notion that drug use or illegal activity eviscerates any right to challenge a search cannot possibly be sustained.  A criminal may assert a violation of the Fourth Amendment just as well as a saint." 573 F.3d 279, 283–84 (6th Cir. 2009).  At oral argument, the government suggested that society accepts a celebrity's hotel registration under an assumed name to avoid the paparazzi, but insisted that society would reject the Domenech brothers' use of an alias because it hides their illegal activity.  Yet *Washington* holds that "the use of a space for illegal activity does not alter the privacy expectations of a person who would otherwise have" a reasonable expectation.  573 F.3d at 283.

### 2.     Use of agent

Had the Domenech brothers rented Room 22 under their own name, they unquestionably would possess a legally cognizable expectation of privacy.  *See Allen*, 106 F.3d at 699.  That they used an agent to rent the room for them does not change this. The D.C. Circuit focused on the relationship of self-registration to one's expectation of privacy in a hotel room in *United States v. Lyons*, where "a key to the room that had

been rented on [the defendant's] behalf was given to him by a third party (whose identity remains secret) . . . ." 706 F.2d 321, 324 (D.C. Cir. 1983). The court held that one can possess a reasonable privacy expectation—even though lacking a legally enforceable contract or property right to the room—because "each [guest] regards the space provided for him as his temporary place of abode." *Id*. at 327; *see also Washington*, 573 F.3d at 283 n.1 ("A person may acquire a reasonable expectation of privacy in property in which he has neither ownership nor any other legal interest.").

> 3.     Use of an alias by the agent

Like its agent argument, we find unpersuasive the government's argument—premised on *United States v. Carr*, 939 F.2d 1442 (10th Cir. 1991)—that the agent's use of an alias forecloses the Domenech brothers from holding any reasonable privacy expectations. In *Carr*, after the defendant failed to present any evidence to establish his expectation of privacy, the district court denied his motion to suppress, citing the failure of proof. The defendant sought to remedy the evidentiary shortcoming later with an affidavit. The Tenth Circuit affirmed the district court's refusal to consider the affidavit, but went on—obviously in dicta—to explain that even if the properly-rejected affidavit were considered, the same result would obtain due to the defendant's inability to "demonstrate that the room was registered to him . . . or that he was sharing it with someone to whom the room was registered." *Id.* at 1446.

*Carr*'s dicta lends support to the government's *general* contention that rental through an alias militates against deeming the occupant's expectation of privacy legitimate, as does dicta from our decision in *United States v. Bruce*, 396 F.3d 697, 709 n.7 (6th Cir. 2005), *vacated on other grounds*, 405 F.3d 1034 (6th Cir. 2005), where we suggested that using an alias or false documents to secure lodging diminishes the legitimacy of the expectation of privacy. Yet, the Tenth Circuit's dicta does little for the government in the *specific* factual setting presented here.

We do not read *Carr* as espousing the registration-required-for-privacy rule applied by the district court, but, instead, understand it to confirm that "[i]mportant considerations in the expectation of privacy equation include ownership, lawful

possession or lawful control of the premises searched." *Carr*, 939 F.2d at 1446; *see also United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (relying on *Carr*'s list of considerations). *Carr* and *Bruce* easily reconcile with suppression of the evidence garnered from Room 22 at the Green Acres Motel. The Domenech brothers demonstrated lawful control/possession with evidence that they procured the room for their own use through their agent, paid for the room, possessed the key to the room, and occupied it both physically and with belongings.

Cases from other Circuits also hold that the use of an alias does not eliminate Fourth Amendment protections. The Eleventh Circuit, for example, recognized a reasonable expectation of privacy in a hotel room registered under an alias. *United States v. Newbern*, 731 F.2d 744, 748 (11th Cir. 1984). And the Fifth, Seventh, and Eighth Circuits similarly acknowledged privacy expectations as legitimate in analogous circumstances. *See United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) (packages delivered under fictitious name); *United States v. Watson*, 950 F.2d 505, 507 (8th Cir. 1991) (defendant possessed expectation of privacy in house purchased under an alias); *United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981) (packages); *see also United States v. Pitts*, 322 F.3d 449, 457–59 (7th Cir. 2003) ("the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable").

### 4.     Use of invalid registration

Only to the motel is the Domenech brothers' invalid registration a legal concern. *See United States v. Cunag*, 386 F.3d 888, 895 (9th Cir. 2004) (occupant of fraudulently obtained hotel room had expectation of privacy until hotel took affirmative steps to repossess the room); *see also Allen*, 106 F.3d at 699 (occupant with insufficient funds possessed expectation of privacy until locked out); *Washington*, 573 F.3d at 284–85 (apartment tenant in violation of lease maintained expectation of privacy because landlord did not evict him); *United States v. McClendon*, 86 F. App'x 92, 95–96 (6th Cir. 2004) (invalid sublet in violation of lease insufficient to render expectation unreasonable). Green Acres accepted a registration card "full of nonsense" for two

rooms from an individual acting for someone else who admitted that others would stay with him.  Because the Domenech brothers exercised control over Room 22 with this de facto permission of the motel, their lawful possession/control legitimizes their expectation of privacy, even if diminished by their agent's use of an alias.

     5.     Social-guest status of Alejandro

Alejandro possessed a reasonable expectation of privacy as a social guest in his brother's room.  "In certain cases, this circuit has even extended standing to challenge a search to non-overnight guests who are permitted to keep items in the residence." *Washington*, 573 F.3d at 283; *see also United States v. Haynes*, 108 F. App'x 372, 374 (6th Cir. 2004) (finding "social guest to have a reasonable expectation of privacy in his host's residence where the guest was able to show a meaningful connection to his host's residence").  Alejandro clearly demonstrated a meaningful relationship to his brother's room:  he paid for the room, had his personal belongings in the room, and held the room key in his pocket.  Consequently, because William demonstrated a reasonable expectation of privacy—showing that he legitimately regarded Room 22 as his temporary residence—Alejandro's meaningful connection validates his own expectation.

## B.  Exigent Circumstances

The government urges that, despite any legitimate expectation of privacy, the search can be upheld because the potential destruction of evidence constituted exigent circumstances.  Having initially searched Room 22 without a valid warrant, the government bears the burden of establishing the legality of the search by a preponderance of the evidence.  *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).  Where probable cause exists, officers may enter without a warrant "when evidence of drug crimes is in danger of destruction." *United States v. Elkins*, 300 F.3d 638, 655 (6th Cir. 2002).  The officers must reasonably believe that the occupants of the structure are likely to destroy evidence.  *Id*. at 656.  Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The district court found that the officers lacked probable cause for the warrantless entry.  Trooper Burchell admitted that the frosted glass prevented him from seeing a sink, shower, or toilet through the bathroom window.  He could not see the hand movements of the individual in the bathroom; he could see only that a person entered the bathroom after officers knocked on the front door.  Because the trooper could not see through the frosted window, the district court correctly held that he lacked probable cause to believe that the defendant would destroy evidence of a drug crime.  Without probable cause, the officers cannot rely on exigent circumstances to justify this warrantless search.  Consequently, the district court should have excluded the evidence found in the motel room.

## III.  Conclusion

We reverse judgment of the district court and remand for proceedings consistent with this opinion.

———————————

## DISSENT

———————————

ALAN E. NORRIS, Circuit Judge, dissenting.  As the Majority recognizes, "[t]he ultimate question is . . . whether one's claim to privacy from government intrusion is reasonable in light of all of the surrounding circumstances." *Rakas v. Illinois*, 439 U.S. 128, 152 (1978) (concurrence).  Moreover, a defendant seeking to suppress evidence under a Fourth Amendment claim of unlawful search bears the burden of establishing a reasonable expectation of privacy. *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (citing *Rakas*, 439 U.S. at 130 n.1).  That burden includes two elements: "(1) he had a subjective expectation of privacy in the searched premises and (2) that society is prepared to recognize that expectation as legitimate." *Id.*  This is not a case where appellants, acting on their own behalf used an alias to register as hotel guests.  Instead, the appellants instructed a third party to rent a motel room under an assumed name (purportedly for his own use) where they could conduct illegal activity.  While defendants had a subjective expectation of privacy, I am unconvinced that they have met their burden to establish that society would recognize that their expectation as legitimate when viewed "in light of all of the surrounding circumstances."

I respectfully dissent.