**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0467n.06

**Nos. 08-1220 & 08-1221**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jul 12, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Plaintiff-Appellee,** | ) |
| | ) |
| v. | ) |
| | ) |
| ALEJANDRO SERRANO DOMENECH, | ) |
| | ) |
| **Defendant-Appellant.** (08-1220) | ) |
| | ) |
| ———————————————————— | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| **Plaintiff-Appellee,** | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM SERRANO DOMENECH, | ) |
| | ) |
| **Defendant-Appellant.** | ) |

**ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

**A M E N D E D
O P I N I O N**

BEFORE:  NORRIS, COOK, and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.**  On November 19, 2010, the United States filed a Petition for Panel Rehearing.  After further consideration of the record we deny the petition as moot, we vacate our prior opinion, *United States v. Domenech*, 623 F.3d 325 (6th Cir. 2010), and replace it with this amended opinion.

Brothers Alejandro and William Serrano Domenech stand convicted on multiple criminal counts related to drug trafficking. On appeal, their primary focus is upon the district court's denial of their joint motion to suppress evidence seized during a warrantless search of the motel room where the pair were arrested. They also challenge the district court's handling of their representation by appointed counsel. Finally, they contend that the sentences imposed by the district court were unreasonable. We conclude that defendants' assignments of error are without merit and therefore affirm the judgments of the district court.

## I.

The motion to suppress evidence seized from the motel room occupied by defendants was filed shortly after the return of the original indictment. After a hearing, the district court denied the motion based upon its conclusion that defendants lacked a reasonable expectation of privacy in the premises and therefore could not raise a Fourth Amendment challenge to the warrantless search and seizure. Opinion & Order, April 6, 2007. Although the government raised an alternative argument that the police officers who conducted the search had probable cause based upon "exigent circumstances," the district court did not address that issue.

After a delay of several months, during which a superseding indictment issued and the case was assigned to a different district court judge,[1] defendants renewed their motion to suppress shortly before trial. Their motion was based upon the intervening deposition testimony of a material witness. The district court addressed the renewed motion during the final pretrial conference and

---

[1] The Honorable Gordon J. Quist presided over the early phases of this prosecution, including the initial disposition of the motion to suppress. Thereafter, the case was transferred to the Honorable Janet T. Neff.

concluded that there remained an insufficient basis as a matter of law to "find that either defendant had a reasonable expectation of privacy in the motel room on the night that they were arrested." Hr'g Tr., Oct. 1, 2007 at 9; Order, Oct. 5, 2007.

The matter proceeded to trial. After the government rested its case, defendants moved to renew their motion to suppress. Arguments by defense counsel focused upon the legitimate expectation-of-privacy to which their clients were entitled. Before reaching the expectation of privacy issue, Judge Neff touched upon the alternative argument raised by the government that the officers had probable cause to search the room based upon exigent circumstances. She noted that a Michigan state court judge had rejected this argument in earlier, related proceedings and that her predecessor, Judge Quist, had not reached the issue when denying the original motion to suppress. Although Judge Neff observed that probable cause was lacking, she again denied the motion because "there was never any evidence . . . in any of the testimony or any of the transcripts . . . to suggest or in any way prove that they were using [the room] with the permission of the person who rented it or that any one of them was the person who rented it."

When asked to consider the denial of a motion to suppress evidence, we typically review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Buford*, 632 F.3d 264, 268 (6th Cir. 2011), *petition for cert. filed,* _U.S.L.W._, (Mar. 29, 2011) (No. 10-9855). That two-tiered standard simply reflects that the trial judge had the opportunity to hear the testimony and assess the credibility of witnesses and therefore substantial deference should be accorded to his or her factual findings. In this case, however, we are reviewing the joint motion to suppress raised during trial. Neither Judge Quist's opinion denying defendants' initial motion, nor

Judge Neff's ruling at the final pretrial conference are before us. In her oral ruling after the government rested its case, Judge Neff reached legal conclusions but made no factual findings. Consequently, our review is de novo. With these considerations in mind, we turn to the facts established at trial.

Towards evening on April 3, 2006, deputies Travis Polash and Chris Crawford of the Clinton County, Michigan, Sheriff's Department were traveling in their cruiser south on Business Route 27 when they passed the Green Acres motel. As they went by, Polash testified that he noticed a green Ford Explorer preparing to pull out of the motel's parking lot. His suspicions were aroused because the vehicle did not leave the driveway after the cruiser passed. The officers doubled back and noticed that the Explorer had backed into a parking spot at the motel. According to Polash, he and Crawford discussed this odd maneuver.

They continued their evening patrol but returned to the motel around midnight. The Explorer was still parked in front of the motel. After running its license plate number, the officers determined that the owner, Marty Hinton, "showed a parole absconder warrant." Officers Jason Jones of the Dewitt Township Police Department and Tim Burchell of the Michigan State Police were in the area and were summoned by Polash. The group decided to "make contact" with the room in front of which the Explorer was parked. Officers Jones and Crawford went to the motel office to review the room's registration. Upon their return, Jones told the others that the registration form had not been properly completed and that the occupant of the room, which was number 22, had also rented Room 31. The person renting the rooms had registered as "Rogelio" and had indicated that he drove a

Pontiac, not a Ford Explorer. Armed with this information, they elected to conduct a "knock and talk" with the occupants of Room 22.

Officer Burchell testified that he volunteered to go to the back of the motel in case someone "tried to get out and/or dispose of any evidence" during the encounter. He had been to the motel on previous occasions and, when he went to the back of the motel, he could identify the bathroom window associated with Room 22. Ultimately, he positioned himself within a foot of the window, which had a frosted glass pane.

He then heard his colleagues knock, followed by some voices. Shortly thereafter, he "observed the light in the bathroom come on and saw a subject enter into the bathroom area." Although he conceded that the frosted glass prevented him from seeing a "clear image" of the person, he formed the impression that he was a male. He watched as "the subject ben[t] forward towards what I believe[d] to be the toilet area. And at that point I thought that this person might be attempting to destroy something or flush something down the toilet." In response, Officer Burchell raised the lower portion of the frosted glass window with his flashlight and saw that the person had a bag in his hand, which he then placed in his mouth. The officer reached in through the window with his right arm and attempted to "strike his forearm to get him to drop the object."

After a brief scuffle, Burchell retreated to the front of the motel and entered Room 22. There he assisted the other officers who were subduing a male suspect. Eventually, the four individuals in the room, defendants and two women, were arrested.

For his part, Officer Polash testified that after Officer Burchell went to the back of the motel, Officer Crawford knocked on the door. Polash heard Crawford questioning a woman about who

owned the Ford Explorer.  The conversation was interrupted by shouting from the back of the room, which Polash recognized as Officer Burchell.  They entered the room and encountered defendant Alejandro Domenech and eventually subdued him.  After securing the room, Officers Crawford and Polash obtained a search warrant.  The subsequent search uncovered contraband, which defendants sought to suppress as products of an illegal search.

Defendants were charged in a six-count superseding indictment with crimes related to firearms, drug trafficking, and possession of counterfeit federal reserve notes.  The jury returned a guilty verdict on all counts.  The district court sentenced Alejandro Serrano Demenech to 420 months of imprisonment, eight years of supervised release, and a fine of $7,380.00; it sentenced William Serrano Domenech to 234 months of imprisonment, five years of supervised release, and a fine of $3,160.00.

## II.

### A.  Suppression of Evidence

As already mentioned, the district court below based its denial of the motion to suppress on defendants' failure to establish a reasonable expectation of privacy in the motel room.  We need not reach that issue, however, because the government raised an alternative ground which we conclude presents a more compelling reason to affirm the judgment of the district court.

Even if we were to assume that defendants had a legitimate expectation of privacy in the motel room, the contested search was lawful because the totality of the circumstances known to the officers when they initiated the search of Room 22 gave them probable cause to believe that there was a "fair probability" that "evidence of a crime" would be found in the room.  We recognize, of

course, that having searched Room 22 without a valid warrant, the government bears the burden of establishing the legality of the search by a preponderance of the evidence. *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002). Officers must show both that there was probable cause to believe a crime was being committed or evidence of a crime would be found, and that exigent circumstances justified warrantless entry. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam) (citing *Payton v. New York*, 445 U.S. 573, 590 (1980)). Where probable cause exists, officers may enter without a warrant "when evidence of drug crimes is in danger of destruction." *United States v. Elkins*, 300 F.3d 638, 655 (6th Cir. 2002). The officers must reasonably believe that the occupants of the structure are likely to destroy evidence. *Id.* at 656. Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). That determination is a "commonsense, practical question" based upon the totality of the circumstances *Id.* at 230-31. Those circumstances, in turn, consist of "objective facts known to the officers at the time of the search." *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998).

What, precisely, did the officers know when they entered Room 22? First, Officer Crawford testified that the Green Acres motel was known for "a lot of drug activity." Second, the driver of the Ford Explorer parked in front of Room 22 had behaved evasively earlier that evening. Third, a check of the license plates of the Explorer revealed that its owner had an outstanding arrest warrant. Fourth, the registration associated with Room 22 was filled out incompletely by "Rogelio," who listed an automobile other than the Ford Explorer parked in front of Room 22. Fifth, Officer Burchell was familiar with the construction of the motel and knew where the toilet for Room 22

would be situated.  Sixth, shortly after he heard his colleagues make contact with the occupants, he observed a figure enter the bathroom and bend over the toilet.  Based upon his prior experience, he concluded that "this person might be attempting to destroy something or flush something down the toilet."  While none of these considerations, when taken individually, would be sufficient to create a "fair probability" that evidence of a crime would be found in Room 22, they strike us as more than sufficient to establish probable cause and exigent circumstances when viewed through the "totality of the circumstances" prism.  Officer Burchell observed a figure rush to the bathroom and appear to bend over the toilet in response to the officers' appearance at the doorway of Room 22.  This gave Officer Burchell probable cause to open the bathroom window to prevent what he concluded was an attempt to destroy evidence.  For their part, the officers at the door of the motel room had probable cause to enter as soon as they heard the shouts of their colleague from the back of the room.

In reaching this holding today, we do not intend to downplay the importance of requiring a warrant.  Had Officer Burchell not first seen a figure hurrying into the bathroom, he would have had no probable cause to open its window to investigate further.  Likewise, had they not heard the shouts of their colleague, Officers Polash and Crawford could not have entered Room 22.  However, the Supreme Court carved out the "exigent circumstances" exception to the warrant requirement to enable officers to respond in a timely way to evolving events – specifically, to prevent the destruction of evidence once the officers have determined that there is a "fair probability that evidence of a crime will be found," *Gates*, 462 U.S. 238, and destruction of evidence is imminent.

For these reasons, we affirm the order of the district court denying defendants' motion to suppress evidence seized from Room 22 of the Green Acres motel.

B.  Substitute Counsel

Both defendants contend that the district court erred when it denied their request for new appointed counsel.  We review for an abuse of discretion.  *United States v. Vasquez*, 560 F.3d 451, 466 (6th Cir. 2009).  A district court abuses its discretion where it "relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard."  *Id.* (quoting *United States v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006)).  When "granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference."  *Id.* at 467 (quoting *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008)).

> This court considers four factors in reviewing a denial of a motion to substitute counsel:
>
> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).  The defendants' requests for substitute counsel were untimely because they raised them at the final pre-trial conference.  The district court demonstrated full awareness of the conflict between the Domenech brothers and their counsel – defendants blamed counsel for failing to put them on the stand at the suppression hearing to testify about their reasonable expectation of privacy in the hotel room.  The defendants' attorneys did not possess a conflict of interest and demonstrated the ability to put on a reasonable defense.  Finally,

the public interest weighed in favor of denying the request as the court previously delayed the trial date for nearly a year due to a prior counsel substitution.

C. Challenge to the Sentences

*1. Standard of Review*

This court reviews a district court's sentence under a deferential abuse-of-discretion standard for reasonableness. *United Sates v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). When a defendant fails to object, we review allegations of procedural error for plain error. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc). This court applies a rebuttable presumption of reasonableness to sentences imposed within the advisory guidelines range. *Id.* at 389-90.

*2. Joint Issues*

The Domenech brothers contest the court's failure fully to consider their age in setting the sentence. The court, however, noted both of their ages at sentencing, explicitly discussing Alejandro's age in crafting a sentence to ensure that upon release he would be incapable of further criminality.

Both defendants also contest the fine imposed by the court, claiming an inability to pay. A defendant's failure to object to the imposition of a fine forfeits any right to appeal that fine. *United States v. Tosca*, 18 F.3d 1352, 1355 (6th Cir. 1994). Neither defendant objected to the fine, thus forfeiting the issue.

*3. Issues Raised by William Domenech*

William Domenech challenges his sentence as both procedurally and substantively unreasonable. However, he offers no persuasive challenge to the length of his sentence or to the

procedure used to calculate it.  Rather, he argues for the first time on appeal that this court should remand for re-sentencing as a crack disparity case.  Specifically, he claims that the district court unreasonably failed to discuss the new guidelines for crack disparities in calculating his sentence. To the contrary, the court sentenced defendant using the correct version of the amended guidelines, which provided for a reduction for certain crack cocaine offenses.  While a later amendment changed the method for calculating the base level offense for crimes involving cocaine base, the district court applied the current version at the time of sentencing.  Under 18 U.S.C § 3553(a)(4)(A)(ii), a district court applies the guidelines "in effect on the date the defendant is sentenced."  In doing so, the district court did not commit plain error.

Defendant also argues that the district court erred in applying a two-level sentencing enhancement for physical restraint of a victim.  *See* U.S.S.G. § 3A1.3.  Defendant contends that, while he may have physically restrained that individual, that restraint was not related to the offense of conviction and is therefore inappropriate.  We disagree.  The guidelines define offense broadly to include all relevant conduct.  U.S.S.G. § 1B1.1 cmt. n.1(H).  Because defendant's restraint of this victim fell within the ambit of relevant conduct, the district court did not err.

Finally, defendant argues that the district court erred in considering uncharged conduct and quantities of drugs.  The district court, however, is permitted to find facts that increase the sentence above the statutory minimum so long as the sentence remains below the statutory maximum for the quantity found by the jury.  *United States v. Solorio*, 337 F.3d 580, 597 (6th Cir. 2003); *See United States v. Mayberry*, 540 F.3d 506, 516-17 (6th Cir. 2008) (noting that judge may find facts by preponderance of the evidence so long as it does not raise sentence above statutory maximum).

Because the district judge did not find facts permitting him to exceed the statutory maximum, this claim lacks merit.

### 4. Issues Raised by Alejandro Domenech

Like his brother, Alejandro Domenech challenges the reasonableness of his lengthy prison term and his $7,380 fine as excessive. In our view, the district judge properly imposed the sentence after careful consideration of the § 3553(a) sentencing factors, with a specific emphasis upon defendant's prior criminal history.

Defendant also contends that the court improperly punished him for indicating he would challenge the conviction on appeal for ineffective assistance of counsel. Throughout the course of the trial, defendant repeatedly complained about his counsel. At sentencing, the district judge raised the issue. Later, defendant stated that he wanted to appeal due to ineffective counsel. In crafting the sentence, the judge noted that defendant lacked remorse about the nature of his actions and continued to blame others. While defendant argues on appeal that the judge improperly considered his statements about ineffective counsel in determining that he failed to take responsibility for his actions, he did not raise this objection below.

In sum, we find that the district court properly considered the various statutory and guidelines factors in crafting Alejandro Domenech's sentence.

**III.**

The judgments of the district court are **affirmed.**

GRIFFIN, Circuit Judge, dissenting.

I would adhere to our original decision, *see United States v. Domenech*, 623 F.3d 325, 331 (6th Cir. 2010). In my view, the evidence was obtained by the police from a search and seizure not supported by probable cause as is required by the Fourth Amendment. Pursuant to the exclusionary rule, the government may not use the fruits of its unreasonable search and seizure. Accordingly, I respectfully dissent.

The Fourth Amendment guarantees the right of liberty against unreasonable searches and seizures by providing:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," *United States v. United States District Court*, 407 U.S. 297, 313 (1972), "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). The fact that the search in the present case was conducted inside a motel room rather than a home does not alter the analysis. As the United States Supreme Court has stated, "[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or an office." *Hoffa v. United States*, 385 U.S. 293, 301 (1966).

The Supreme Court reiterated the teachings of *Payton* in *Kirk v. Louisiana*, 536 U.S. 635 (2002) (per curiam). There, the Court held that "[a]s *Payton* makes plain," the police may not enter

- 13 -

a private residence without a warrant unless *both* "probable cause plus exigent circumstances" exist. *Id.* at 638. Here, it is undisputed that the police did not have a search warrant before entering the defendants' motel room, and therefore they required both probable cause and exigent circumstances to lawfully conduct their search.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc) (citation and internal quotation marks omitted). "[T]he mere possibility that a crime could be occurring within a home is not sufficient to justify a warrantless search; the police must have an objectively reasonable basis for their belief that a crime is being committed." *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005) (citation and internal quotation marks omitted). Similarly, "mere speculation that a crime could be occurring is insufficient to establish probable cause." *Id.* Regarding evidence of a crime, probable cause arises only when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In our original decision, we ruled that the "district court correctly held" that "the officers lacked probable cause for the warrantless entry." *Domenech*, 623 F.3d at 331. We reached this decision primarily because "Trooper Burchell admitted that the frosted glass prevented him from seeing a sink, shower, or toilet through the bathroom window. He could not see the hand movements of the individual in the bathroom; he could see only that a person entered the bathroom after officers knocked on the front door." *Id.* Trooper Burchell's subjective hunch that "this person *might* be attempting to destroy *something or* flush *something* down the toilet[,]" is not the *objective* evidence

required to establish probable cause for a search and seizure of a residence for drugs or weapons. (Emphasis added.) The majority concludes "[h]ad Officer Burchell not first seen a figure hurrying into the bathroom, he would have had no probable cause to open its window to investigate further." In my view, while the hurried activity may have justified further investigation when considered with the other general evidence, it did not establish probable cause for a warrantless entry into the motel room. The text of the Fourth Amendment requires more.

My colleagues now abandon our prior holding based on their new conclusion that, when the circumstances are considered in their totality, the officers possessed probable cause to believe that evidence of a drug crime would be found in Room 22. These circumstances are as follows:

> First, Officer Crawford testified that the Green Acres motel was known for "a lot of drug activity." Second, the driver of the Ford Explorer parked in front of Room 22 had behaved evasively earlier that evening. Third, a check of the license plates of the Explorer revealed that its owner had an outstanding arrest warrant. Fourth, the registration associated with Room 22 was filled out incompletely by "Rogelio" who listed an automobile other than the Ford Explorer parked in front of Room 22. Fifth, Officer Burchell was familiar with the construction of the motel and knew where the toilet for Room 22 would be situated. Sixth, shortly after he heard his colleagues make contact with the occupants, he observed a figure enter the bathroom and bend over the toilet.

"To establish probable cause, this court has explained that 'the circumstances must indicate why evidence of illegal activity will be found in a particular place.'" *United States v. Howard*, 621 F.3d 433, 455 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). The majority appears to believe that probable cause to search a residence exists when there is a fair probability to conclude that some vague or generalized criminal activity may be afoot or unspecified evidence of a crime found therein. However, as we stated in *Ellison v. Balinski*, 625

F.3d 953 (6th Cir. 2010), "[i]t is difficult, to say the least, to square this contention with the history of the Fourth Amendment, which was enacted in part to curb the abuses of general warrants, devices which provided British officers with broad discretion to search the homes of citizens of the Colonies for evidence of vaguely specified crimes." *Id*. at 958; *see also Steagald v. United States*, 451 U.S. 204, 220 (1981) (discussing the history of the Fourth Amendment). Contrary to the majority's premise, probable cause supporting a search requires the government to establish "a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison*, 625 F.3d at 958.

In my view, the government has failed to adequately demonstrate "why evidence of [a drug crime would] be found in [Room 22]." *Carpenter*, 360 F.3d at 594 (citation and internal quotation marks omitted). Indeed, only two of the circumstances cited by the majority even arguably relate to drugs: (1) Officer Burchell's observations, and (2) Officer's Crawford's testimony that the Green Acres Motel was known for "a lot of drug activity." Neither circumstance is sufficient to justify a warrantless entry, whether taken individually, or viewed through the totality-of-the-circumstances prism. As we noted in our original decision, Burchell "admitted" that he observed very little; "he could see only that a person entered the bathroom after officers knocked on the front door." *Domenech*, 623 F.3d at 331. "Because the trooper could not see through the frosted window, the district court correctly held that he lacked probable cause to believe that the defendant would destroy evidence of a drug crime." *Id.*

Officer's Crawford's statement that the Green Acres Motel is a high drug-activity area is a "context-based factor[] that would have pertained to anyone in the [area] at the time and should not

be given undue weight." *United States v. See*, 574 F.3d 309, 314 (6th Cir. 2009); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). "This caveat is especially appropriate in this case, because while [Crawford] testified that the area was known for drug [activity] specifically, [the officers] observed no conduct from [the defendants] consistent with drug activity." *United States v. Johnson*, 620 F.3d 685, 693 (6th Cir. 2010). The Fourth Amendment is not suspended or modified for persons who live, work, or travel through "high-crime" areas. *Id*. at 692-93.

The remaining facts cited by the majority do not bridge the gap of necessary objective evidence to establish probable cause. Neither the allegedly evasive behavior of the driver of the Ford Explorer nor the registration associated with the motel room provide "reasonable grounds for belief" that illegal drugs or weapons would be found in Room 22. *Ferguson*, 8 F.3d at 392. And, while there was an outstanding arrest warrant for the owner of the Ford Explorer, that warrant was a parole absconder warrant and not an arrest warrant for a drug-or weapons-related offense. Regardless, it is "well established" that the "existence of probable cause to arrest will not necessarily establish probable cause to search." *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (citation and internal quotation marks omitted). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Here, the evidence does not establish that the police had reasonable grounds for believing that Room 22 would contain evidence of a drug or weapons crime; thus, they lacked probable cause to conduct the warrantless search. Simply put, because the vague and general evidence of suspicious activity would have been insufficient to support a drug or weapons crime search warrant, it is similarly inadequate to establish the probable cause necessary to justify the warrantless search at issue.

Finally, because the government must demonstrate *both* probable cause and exigent circumstances to justify the warrantless entry, I would not reach the issue of exigent circumstances. I would hold that the search and seizure in Room 22 was unreasonable in violation of the Fourth Amendment because it was conducted without probable cause. For this reason, I would adhere to our original decision and deny the government's petition for panel rehearing for lack of merit.