United States Court of Appeals
Fifth Circuit

**F I L E D**

November 3, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-30415
Summary Calendar
_____

UNITED STATES OF AMERICA,

               Plaintiff - Appellant,

     v.

PERCY WILLIAMS,

               Defendant - Appellee.


                   --------------------
         Appeal from the United States District Court
            for the Middle District of Louisiana
                  USDC No. 02-CR-84-ALL
                   --------------------

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge.

     The United States appeals the order of the district court

suppressing a firearm seized in connection with the arrest of

Percy Williams and post-arrest statements made by Williams.  The

firearm was seized subsequent to police pursuit of a fleeing

Williams, who was observed tossing the gun onto the ground during

flight.  Williams was charged with violating 18 U.S.C. §

922(g)(1).  The district court, in suppressing the firearm and

_____

     [1]Pursuant to 5th Cir. R. 47.5, this Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

1

statements, found that the police pursuit of Williams was improper, and that, as a result, Williams's abandonment of the gun was involuntary. The United States argues that the officer's pursuit of Williams was based on a reasonable suspicion of criminal activity and that the firearm and statements made by Williams were lawfully obtained. We agree.

## Background Facts

On the night of January 8, 2002, Baton Rouge police officer Douglas Barron caught sight of Percy Williams walking down the street. Williams made eye contact with Officer Barron, then immediately turned, jogged south away from the street and up the driveway of a residence at 4112 Sycamore, and placed something in his mouth. Upon observing this behavior, Officer Barron stopped his vehicle and gave chase on foot after Williams. During that pursuit, Officer Barron saw Williams toss an object onto the ground, which, when recovered, police found to be a Taurus .357 revolver. Williams was apprehended, given *Miranda* warnings, and taken into custody.

Williams was charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). During pretrial proceedings, Williams moved to suppress the firearm along with any statements made in connection with his arrest. He argued that the police had no probable cause or reasonable suspicion to justify their pursuit and detention of

2

him, so that the pursuit itself constituted an unlawful seizure of his person under the Fourth Amendment. Thus, Williams contended that the gun and any statements derived from his arrest should be excluded as the "fruit" of an unconstitutional seizure.

The district court found that Williams was not seized while the officer chased him. The court held, however, that the chase was "improper," because the officer did not have reasonable suspicion to pursue Williams. Thus, the trial judge held that the gun and Williams's statements made while in custody were excludable. The United States timely appealed.

### *Standard of Review*

In reviewing a suppression order based on live testimony at a suppression hearing, we accept the trial court's factual findings unless they are clearly erroneous or influenced by an incorrect analysis of the law. *See United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993); *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir. 1984). We review the trial court's conclusions of law *de novo*. *See Alvarez*, 6 F.3d at 289. Finally, we "view the evidence in the light most favorable to the prevailing party." *United States v. Piaget*, 915 F.2d 138, 140 (5th Cir. 1990).

### **Seizure**

On appeal, the United States argues that the district court erred in excluding the gun and statements of Williams, because

3

(1) Officer Barron had reasonable suspicion to investigate and chase Williams; and, (2) therefore, Williams lacks standing to challenge seizure of the firearm, because his abandonment of the firearm was voluntary and not influenced by any improper police conduct.

Under *California v. Hodari*, seizure of a person by an officer occurs only by application of physical force or by a show of authority to which the subject yields. *See* 499 U.S. 621, 626 (1991); *see also United States v. Silva*, 957 F.2d 157, 159 (1992) (subject evading police officer in chase was seized only when physically apprehended); *c.f. Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) (driver of stolen car attempting to flee police was not "seized" until he was stopped by police roadblock). In *Hodari*, the Supreme Court found that the fleeing subject, pursued on foot by police, was not seized until he was physically tackled by an officer. 499 U.S. at 626. Thus, the Court held that the cocaine dropped by Hodari while he was running from police was not the fruit of his subsequent seizure. *Id*.

The facts in the instant case are similar to those in *Hodari*. Officer Barron chased Williams through the front yard of 4112 Sycamore and observed him discard something metallic from his jacket pocket. The officer testified that he then withdrew his service weapon, ordered Williams to stop, and Williams complied. Relying on *Hodari*, the trial judge correctly

4

determined that Williams was not seized during the initial chase when he abandoned the firearm.  Indeed, Williams was not seized, under *Hodari*, until Officer Barron made a show of authority by ordering Williams to halt, and Williams yielded.

## Reasonable Suspicion

The trial court further held that, although Officer Barron had not seized Williams during the initial chase, the officer's conduct was improper because it was not founded upon reasonable suspicion.  In justifying an investigation or particular intrusion upon the constitutionally protected interests of a private citizen, an officer must be able to attest to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  The officer's basis for the intrusion must be more than an "'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (quoting *Terry*, 392 U.S. at 27).  In measuring the reasonableness of police conduct, the reviewing court should not assess factors at play individually, *see United States v. Cardona*, 955 F.2d 976, 980 (5th Cir. 1992), but should take into account the totality of the circumstances at issue in the particular case.  *See United States v. Sokolow*, 490 U.S. 1, 8 (1989); *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992).

5

For instance, in *Illinois v. Wardlow*, the defendant fled upon seeing police vehicles converge in an area known for heavy drug activity. In determining whether the police had reasonable suspicion to pursue Defendant Wardlow, the Supreme Court noted that, while an individual's presence in a high crime area is not enough, standing alone, it is among the relevant contextual factors the court may consider. *See* 528 U.S. at 124. The Court explained that "nervous, evasive behavior" is likewise germane to a reasonable suspicion analysis. *Id*. "Headlong flight–wherever it occurs–is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.; see also United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000).

Like the defendant in *Wardlow*, Williams saw the police in a high crime area, and then fled. Officer Barron testified that at approximately 10:00 on the night of January 8, 2003, he was traveling eastbound on Sycamore Street and noticed Williams walking westbound along the street. According to the officer, Williams saw his marked police car, made eye contact with him, then immediately changed directions and jogged up the driveway of a residence at 4112 Sycamore. As Williams jogged away from the street, Officer Barron stated that he saw Williams remove something from his pocket and place it in his mouth. Upon observing this behavior, Officer Barron sped up to the driveway,

parked and exited his vehicle, and pursued Williams on foot. Officer Barron was 15 to 30 feet behind Williams as Williams ran around the back of the house. As Officer Barron chased Williams into the backyard, he saw Williams remove a metallic object from his jacket pocket and throw it under the rear steps of the house. The officer then drew his service weapon and commanded Williams to move away from the steps and place his hands in the air. Williams acquiesced, and at this point Officer Carl Mayo arrived on the scene. Williams was handcuffed and mirandized, and Officer Mayo recovered a silver Taurus .357 firearm from under the back stairs.

Officer Barron testified that Williams's flight upon seeing him and the act of placing something in his mouth as he quickly moved away raised his concerns. He also noted that it was night time, and that the neighborhood in which the incident took place was known for criminal activity, including three armed robberies in the previous two days. The Government argues that all of these considerations, taken together, established a reasonable and particularized suspicion in Officer Barron that criminal activity was afoot.

Williams argues, however, and the trial judge held, that Officer Barron did not have reasonable suspicion to commence his chase of Williams. The trial judge emphasized that there could have been an innocent explanation for Williams's behavior–that Officer Barron could have just as easily concluded that 4112

7

Sycamore was Williams's own residence, which he was quickly returning to.  While this assertion may be true, it does not negate the ability of an officer to have sufficient cause to investigate an individual.  The Court in *Wardlow* noted that, "even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation . . . .  *Terry* recognized that the officers could detain the individual[] to resolve the ambiguity."  528 U.S. at 125.  The Court concluded that, "in allowing such detentions, *Terry* accepts the risk that officers may stop innocent people." *Id*. at 126.

The trial court also noted the many factors that were not present during Officer Barron's encounter with Williams, which could have led him to suspect Williams of criminal activity.  Among other things, the court stressed that Williams did not fit the description of the recent armed robbery suspects; no crimes had recently been reported in the area, so that Williams could be considered a suspect or a witness; and Williams did not furtively glance over his shoulder at Officer Barron.  This Court has held that under a "totality of the circumstances" analysis, the absence of a particular factor will not control a court's conclusions.  *See Cardona*, 955 F.2d at 980.  Therefore, we do not weigh all of the factors that did not contribute to the officer's suspicions in this case.  We instead assess the factors considered by the officer, in their totality, in order to

8

determine whether his suspicion was objectively reasonable.

The trial court was correct in noting that Officer Barron was on the lookout for two armed robbery suspects on the night in question. Nonetheless, Officer Barron was also conducting a routine patrol of his assigned district, per his regular duties. While on the patrol, in an area known for its criminal activity, Officer Barron spotted Williams, who apparently fled, unprovoked, upon seeing the officer. Under *Wardlow*, Williams's unprovoked flight upon seeing police in an area known for heavy criminal activity is enough to support reasonable suspicion. *See* 528 U.S. at 124-125. Indeed, Officer Barron's reason to believe that Williams might be engaged in criminal conduct was even greater than those of the police in *Wardlow*, because he saw Williams take something from his pocket and place it in his mouth as he fled. Officer Barron testified that this behavior appeared suspicious to him, and surmised that Williams may have been placing narcotics in his mouth. *C.f. Rener v. Beto*, 447 F.2d 20, 22 (5th Cir. 1971) (police had probable cause to arrest suspect who appeared to be about to destroy a marijuana cigarette by eating it).

We do not dispute the trial court's factual finding that Williams did not immediately appear to be one of the robbery suspects the police were searching for, in particular. However, we agree with the Government that the specific observations

9

considered by Officer Barron, taken as a whole, were sufficient to give rise to a reasonable suspicion in Officer Barron that criminal activity was afoot and, therefore, justify his investigation and pursuit of Williams.  Based on that reasonable suspicion alone, Officer Barron's subsequent seizure of Williams was warranted.  *See, e.g., United States v. Sharpe*, 470 U.S. 675 (1985) (where officer drew his gun, ordered driver out of his truck, and detained him while truck was searched, the detention required only reasonable suspicion of criminal activity).  However, we find that once Officer Barron chased the fleeing Williams into the backyard of the residence and saw him discard an object, his suspicions increased to probable cause to seize him.  *See United States v. Wadley*, 59 F.3d 510 (5th Cir. 1995) (officers had probable cause for warrantless arrest where suspect persistently evaded police in high crime area and attempted to discard an object while fleeing).   Thus, we hold that Officer Barron's pursuit and detention of Williams were not improper.

## Standing

Finally, we look to the issue of whether Williams had standing to challenge the seizure of the firearm.  It is well-established law that a defendant who has voluntarily abandoned property lacks standing to challenge the seizure of that property.  *See*, *e.g.*, *Abel v. United* States, 362 U.S. 217, 240-241 (1960); *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.

10

1973). However, to preclude standing, the abandonment must have been "voluntary and not influenced by improper police conduct." *Alvarez*, 6 F.3d at 289. When determining whether police conduct was improper, legal presence of police for pursuit or for investigation does not, of itself, render the abandonment involuntary. *See Colbert*, 474 F.2d at 176; *accord United States v. Quiroz-Hernandez*, 48 F.3d 858 (5th Cir. 1995); *Alvarez*, 6 F.3d 287. Having held that Officer Barron properly acted on a reasonable suspicion of criminal activity and with probable cause, we conclude that Williams voluntarily abandoned the firearm, and that he did not have standing to challenge seizure of the weapon and the statements he made incident to his arrest.

### Conclusion

We find that the trial court erred in granting Williams's motion to suppress. The police officer's conduct in pursuing and detaining Williams was based on lawful reasonable suspicion of criminal activity and on probable cause, and was not improper. Therefore, Williams's abandonment of the firearm was voluntary and he did not have proper standing to complain of its seizure. Finally, lacking any unconstitutional seizure of either his person or property under the Fourth Amendment, Williams's statements, made after he was given *Miranda* warnings, were lawfully obtained. Consequently, we REVERSE the district court's order granting Williams's motion to suppress and REMAND the case

11

to the district court for further proceedings.

REVERSED AND REMANDED.