**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**James MCCLENDON, Defendant–**
**Appellee.**

**No. 02–2021.**

United States Court of Appeals,
Sixth Circuit.

Jan. 12, 2004.

Kathleen Moro Nesi, Asst. U.S. Attorney, Detroit, MI, for Plaintiff–Appellant.

Karen J. Davis Roberts, Saline, MI, for Defendant–Appellee.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

James McClendon, charged as a felon in possession of a firearm, filed a motion to suppress evidence found during the warrantless search of his satchel, arguing that the search violated the Fourth Amendment's prohibition against unreasonable searches and seizures. The district court agreed, and suppressed the evidence. The Government now appeals the district court's order suppressing the evidence obtained from the search of the satchel. We affirm the order of the district court, as the search of the satchel violated McClendon's Fourth Amendment rights.

### I. Background

On June 21, 2001. police officers executed a state search warrant, based on a complaint of drug sales, on an apartment at 27543 Lehigh Street, in Inkster, Michigan. The apartment, a one-bedroom apartment in a public housing development, was leased to Esther Rudisel, and Rudisel was the only person authorized under the lease to live there. Rudisel had. however, sublet the bedroom of the apartment to McClendon and a woman named Diane Boyce.

When the officers arrived to execute the warrant, only Boyce was present, but Rudisel arrived shortly thereafter. In the bedroom, officers found what appeared to be four packets of heroin and a crack pipe in a man's bathrobe, a dish with a razor blade and straws and what appeared to be cocaine residue, and two boxes of ammunition. Boyce was arrested and the officers departed, leaving a copy of the search warrant with Rudisel.

Shortly after the search team departed. McClendon arrived at the apartment. Rudisel flagged down a passing Inkster officer. Officer Takala, who had not been part of the search team and was unaware of the search warrant. Rudisel repeatedly exclaimed. "He's inside. He's inside. . . . The guy you're looking for is inside." Takala followed Rudisel back to the apartment and observed McClendon. carrying a blue cloth satchel, in the living room/dining room area. McClendon left the apartment, while Rudisel told the officer about the search warrant and then confirmed that McClendon was the man named in the search warrant.

Takala confirmed (by radio) that McClendon was wanted by the police and should be arrested. He left the apartment to look for McClendon. following a walkway along the side of the building to a courtyard at the back of the apartment. Within a few moments. Takala located McClendon and arrested him approximately 150 yards from the apartment building. McClendon was not carrying the satchel when he was arrested. Takala delivered the defendant to a nearby transport vehicle, and then joined other officers in searching for the blue satchel.

The officers located the satchel on the bedroom window ledge of the 27543 Lehigh apartment. The window was open, and the satchel was resting on its side, halfway inside and halfway outside the window. Takala opened the satchel, observed a handgun, and closed the satchel: he then turned it over to another officer. That officer examined the contents and discovered two guns.

McClendon. charged with being a felon in possession of a firearm, moved to suppress the evidence discovered in the satchel. The motion was referred to a magistrate judge for a report and recommendation, and the magistrate recommended that the motion to dismiss be denied. The district court disagreed and suppressed the evidence. While the Government argued against suppression on several theories below, it now claims that the district court erred in two respects. First, the Government argues that the defendant had no reasonable expectation of privacy because he had abandoned the satchel. Second, the Government argues that the defendant had no reasonable expectation of privacy in the apartment, because his arrangements with Rudisel violated the terms of her lease and because she had effectively evicted him by summoning Takala to the apartment to arrest him.

## II. Standard of Review

This court reviews the district court's factual findings in a suppression hearing for clear error and reviews the district court's conclusions of law de novo. *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir.2000). The question of abandonment is a mixed question of law and fact. *United States v. Oswald*, 783 F.2d 663, 665–66 (6th Cir.1986).

## III. Analysis

### A. Abandonment

■ McClendon's placement of the satchel on the window sill of his own bedroom did not constitute abandonment for the purposes of the Fourth Amendment analysis. A warrantless search of abandoned property does not violate the Fourth Amendment's proscription against unreasonable searches. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). "The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object." *United States v. Rem*, 984 F.2d 806, 810 (7th Cir.1993) (quoting *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.1983)). The defendant's subjective intent is not determinative; rather, the court must make an objective determination based on the totality of the circumstances. *Id.* Considering all of the circumstances of this case, we conclude that McClendon retained a reasonable expectation of privacy in the satchel.

McClendon placed his satchel on the sill of his open bedroom window. The Government argues that, in placing the satchel on the window sill—partly inside and partly outside of the bedroom—McClendon abandoned it and therefore, retained no reasonable expectation of privacy in it or its contents. The key to the Government's argument appears to be that the window sill was visible to and could be accessed from the public courtyard behind the apartment building. Essentially, the Government contends that the visibility of the satchel, coupled with its accessibility from the public courtyard, so invited inspection or intrusion from passersby that McClendon could not reasonably expect it to remain unmolested.

The fact that a passerby in the courtyard could have picked up the satchel did not eliminate McClendon's reasonable expectation of privacy in the satchel. Open and unscreened windows may afford passersby with opportunities to grab any number of things wholly within a residence. The Fourth Amendment does not protect an individual's privacy only if he ensures that his possessions are placed beyond the grasping reach of his fellows.

This conclusion is consistent with this court's prior decisions in *United States v. Oswald*, 783 F.2d 663 (6th Cir.1986) and

*United States v. Rumph,* No. 97–3135, 1998 WL 242340 (6th Cir. May 8, 1998) (unpublished), relied upon by the Government. In *Oswald,* the court found that the defendant abandoned a suitcase full of cocaine when he left it in a car burning by the side of the road and failed to make any attempt to report the fire or claim the suitcase. *Oswald,* 783 F.2d at 664–65. While the suitcase was left in a car rather than on the street, the court reasonably concluded that the suitcase had been abandoned because the defendant had not attempted to recover it or the car. even though he knew that the car would be impounded. In the instant case, McClendon left the satchel on his own window ledge, and it was immediately recovered by the police. There is no similar evidence that McClendon intended to abandon it. In *Rumph,* the defendant, upon the approach of the police, tossed a plastic bag under a car parked in his driveway. In concluding that the defendant had abandoned the bag (which contained cocaine), the court noted that the bags were visible from the nearby public sidewalk. 1998 WL 242340 at *3. The court stated, "Any expectation of privacy that [the defendant] may have had in items lying in his driveway and visible from the street was objectively unreasonable—and one does not manifest a subjective expectation of privacy in a plastic bag by throwing it away when police come into view." *Id.* In contrast, placing an item on one's own bedroom window sill is quite different than tossing an item on the ground near a public street or leaving it in a burned out car. Accordingly, McClendon cannot be said to have abandoned the satchel, but rather, viewed objectively, he retained a reasonable expectation of privacy in it. assuming he had a reasonable expectation of privacy in the bedroom.

## B. Reasonable expectation of privacy in the bedroom

■ McClendon had a reasonable expectation of privacy in the bedroom of the Lehigh Street apartment that he sublet from Rudisel. A defendant bears the burden of showing that his own Fourth Amendment rights were violated. *United States v. McRae,* 156 F.3d 708, 711 (6th Cir.1998). He must establish both that he had a subjective expectation of privacy in the searched premises and that society is prepared to recognize that expectation as legitimate. *Id.* (citation omitted). The Government urges that McClendon had no reasonable expectation of privacy in the apartment, because the terms of Rudisel's lease prohibited subletting and Rudisel summoned the police to arrest him.

Rudisel's violation of her lease in subletting the bedroom to McClendon did not deprive McClendon of a reasonable expectation of privacy in what was admittedly his residence. The facts in this case are easily distinguishable from the facts in the cases relied on by the Government. In *United States v. McRae,* 156 F.3d 708 (6th Cir.1998), the court concluded that the defendant did not have a legitimate expectation of privacy in a vacant home in which he had lived for a week, but that he did not own or rent. *Id.* at 711. In *United States v. Ross,* No. 00–6453, 2002 WL 1478586, 43 Fed.Appx. 751 (6th Cir. July 9, 2002), the defendant—who rented an apartment on a month-to-month basis—failed to pay rent for four months, abandoned the apartment for over two months without notifying his landlord that he was leaving or planned to return, and allowed the electricity to be shut off. *Id.* at *3. In the instant case, McClendon paid rent to Rudisel and was living in the bedroom during the period in which the satchel was seized. While the arrangement may have violated Rudisel's rental agreement with the housing authori-

ty, the Government has cited no authority for the proposition that such a violation renders McClendon's expectation of privacy in his bedroom unreasonable.

### IV. Conclusion

For the reasons discussed herein, the order of the district court is AFFIRMED.