REVISED 9/12/23

# United States Court of Appeals for the Fifth Circuit

---

No. 22-50042

---

United States Court of Appeals
Fifth Circuit

**FILED**
May 10, 2023

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Albert Ramos Ramirez, Jr.,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CR-334-1

---

Before Dennis, Elrod, and Ho, *Circuit Judges.*

Jennifer Walker Elrod, *Circuit Judge*:[*]

Defendant Albert Ramirez was convicted of being a felon in possession of a firearm after law enforcement officers discovered a gun in his jacket during a warrantless search. The sole question on appeal is whether, by tossing his jacket over a fence onto his mother's property, Ramirez forfeited his property or privacy interest in the jacket, thereby freeing officers to seize and search the jacket heedless of Fourth Amendment constraints.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

He did not. Whether considered under the rubric of Ramirez's property rights or that of his reasonable expectation of privacy, Ramirez's jacket continued to enjoy Fourth Amendment protections because Ramirez did not demonstrate an intent to abandon it. As the Government has not argued that an exception to the Fourth Amendment's warrant requirement applied to the search, we vacate and remand for further proceedings not inconsistent with this opinion.

I

When Officer Christopher Copeland of the San Antonio Police Department began his shift, he was told to be on the lookout for a truck that was registered to Ramirez's mother. Accordingly, Officer Copeland visited her address several times during his patrol. Upon driving up the second time, he discovered the truck, with Ramirez in the driver's seat, at an intersection catty-corner to the mother's house. He then observed Ramirez roll through a stop sign before pulling into his mother's driveway. Officer Copeland initiated a stop in response to the traffic violation.

But at that point Ramirez was already exiting the vehicle, which was now parked in front of his mother's chain link fence. A female passenger also exited the vehicle. Officer Copeland observed Ramirez walk toward the gate and toss his jacket over the fence into his mother's yard and onto the back corner of a closed trash bin.

Ramirez then began to walk around the front of the truck, at which point Officer Copeland confronted him, patted him down, placed him in handcuffs, and detained him in the back of his patrol vehicle. Officer Copeland also detained the female passenger. Officer Copeland later testified that he felt it was necessary to secure Ramirez and the female passenger as a safety precaution because they had exited the vehicle without

being instructed to do so and because the female passenger attempted to approach the truck multiple times despite being instructed not to.

Officer Copeland advised Ramirez that he had been stopped because he ran a stop sign, to which Ramirez replied, "my bad." While patting him down, Officer Copeland asked Ramirez whether he had any weapons, and Ramirez responded that he did not. He then asked Ramirez for permission to search the truck, which Ramirez gave. No contraband was found in the truck.

Officer Craig Pair arrived soon thereafter, whereupon Officer Copeland asked Officer Pair to reach over the fence to retrieve the jacket and, searching it, discovered a gun in one of its pockets. Officer Copeland did not ask for consent to search the jacket or to enter the property.

Ramirez was charged with being a felon in possession of a firearm. He moved to suppress the gun, arguing, as relevant here, that he did not abandon his jacket by tossing it over his mother's fence and that its search therefore violated his rights under the Fourth Amendment.

A suppression hearing was held in which the Government's primary witness was Officer Copeland. Testimony showed that Ramirez had lived at his mother's house most of his life, including into his adulthood, and that he still came to her house almost daily for meals and to check on and make breakfast for her. Evidence also showed that Ramirez regularly received mail at his mother's address, including bills, and that his criminal history and his most recent ID both linked him to his mother's address.

The district court ultimately denied the motion to suppress, concluding that Ramirez abandoned his jacket. With the gun admitted, Ramirez pleaded guilty and was sentenced to 46 months' incarceration. He now appeals his conviction.

## II

The relevant facts are undisputed.  The legal questions raised by Ramirez about the constitutionality of Officer Copeland's conduct are reviewed *de novo*.  *United States v. Aguilar*, 973 F.3d 445, 448 (5th Cir. 2020).

### A

From the late 1960s until quite recently, Fourth Amendment inquiries focused exclusively on whether challenged governmental action intruded on the challenger's "reasonable expectation of privacy"—a formulation taken from Justice Harlan's concurrence in the seminal case of *Katz v. United States*.[1]  This was the approach followed by the district court.

One of the many ways a criminal suspect can forfeit his reasonable expectation of privacy, and thus Fourth Amendment protection, is by abandonment—the quintessential examples being a fleeing suspect who abandons contraband by tossing it to the ground as he runs from police and the suspect who abandons an item by insisting that it does not belong to him. In cases of alleged abandonment, courts look to "[a]ll relevant circumstances existing at the time" to determine "whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973).

The district court relied on *Colbert* to conclude that Ramirez abandoned his jacket, and therefore retained no reasonable expectation of privacy in its contents, by tossing it over his mother's fence.  But we do not think it can fairly be said that Ramirez manifested an intent to disclaim

---

[1] 389 U.S. 347, 360 (Harlan, J., concurring).

ownership in his jacket simply by placing it on the private side of his mother's fenced-in property line.

This would be a different case if Ramirez had dropped his jacket on the public sidewalk and ran away, or if he had insisted before the search that the jacket did not belong to him. It would also be a different case if the evidence demonstrated that Ramirez was not permitted to leave his possessions on his mother's property. But the Government has not offered any evidence to that effect. To the contrary, the evidence offered at the suppression hearing overwhelmingly showed that Ramirez was welcome on the property.

The Government maintains on appeal that "[a] defendant abandons an object when he throws it to the ground as officers approach." As Ramirez points out, however, the authorities cited by the Government for this blanket rule all involve the critical additional facts that the challenged evidence was discarded in a public place while the suspect was fleeing arrest. *United States v. Bush*, 623 F.2d 388, 390–91 (5th Cir. 1980) (holding that defendant had no legitimate expectation of privacy in package containing cocaine he hurled to the ground in a public bowling alley); *United States v. Jones*, 347 F. App'x 129, 135 (5th Cir. 2009) (holding that defendant abandoned $100 bill and drugs dropped in a parking lot while running from police); *United States v. Williams*, 79 F. App'x 677, 681–82 (5th Cir. 2003) (holding that defendant abandoned gun he tossed in a stranger's backyard while running from police).[2] Ramirez did not flee from Officer Copeland or leave his jacket in a public place.

---

[2] The fourth case cited by the Government, *United States v. Silva*, 957 F.2d 157 (5th Cir. 1992), is inapposite. There the court found that the defendant had been lawfully seized before he disclosed the evidence he sought to suppress. *Id*. at 161.

The Government also argues that Ramirez "manifested an intent to abandon the jacket" when he walked away from the jacket and towards Officer Copeland. For support the Government relies, as did the district court, on *Colbert*. But the Government overstates the holding in that case too. *Colbert* relied on "[a]ll relevant circumstances existing at the time"— *i.e.*, that the defendants had verbally disclaimed ownership of their briefcases, placed the briefcases on a public sidewalk, and walked away. Ramirez, by contrast, did not disclaim ownership of his jacket, did not place it in a public place, and consequently did not walk away in a manner consistent with an intent to abandon it. To the contrary, he tossed it over the fence and onto his mother's property.[3]

Finally, the Government argues that Ramirez "implicitly den[ied] the jacket and the pistol in its pocket" when, while being patted down, he insisted that he did not have a gun. It is true that a suspect may relinquish his privacy interest in an item by disclaiming ownership of it, as *Colbert* demonstrates. But the Government did not identify, and we have not found, any case holding that a suspect loses his reasonable expectation of privacy in an item by lying about its contents.

The facts of this case parallel those of our sister circuit's decision in *United States v. McClendon*, 86 F. App'x 92 (7th Cir. 2004). There law enforcement seized a defendant's satchel, which the defendant had placed on his open bedroom windowsill. *Id.* at 94. The government argued that the defendant had abandoned the satchel, and thus retained no reasonable

---

[3] The Government also cites *United States v. Johnson*, in which a defendant was held to have lost his reasonable expectation of privacy in his fanny pack because he left it in his neighbor's home against his neighbor's express wishes. No. 07-30955, 2008 WL 3876550 *3 (5th Cir. 2008 Aug. 21, 2008). Again, the evidence in this case does not show that Ramirez was unwelcome on his mother's property.

expectation of privacy in its contents, by placing it where it was easily accessible to passersby. *Id.* The Seventh Circuit disagreed, distinguishing cases like those the Government relies on here because "[t]he Fourth Amendment does not protect an individual's privacy only if he ensures that his possessions are placed beyond the grasping reach of his fellows." *Id.* at 94. In the Seventh Circuit's view, "placing an item on one's own bedroom window sill is quite different than tossing an item on the ground near a public street." *Id.* at 95.

This case is also like *United States v. Sanders*, in which a defendant left an airport without claiming her luggage. 719 F.2d 882 (6th Cir. 1983). The defendant told airport agents that she had not claimed her bags because she was not going home immediately. *Id.* at 886. But she never denied ownership of the bags. *Id.* In deciding that the defendant retained a reasonable expectation of privacy in her luggage, the court observed that "[o]ne can properly infer from her words and actions that [the defendant] continued to indicate she had an interest in keeping the contents private." *Id.* at 886. *See also United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003) ("We are convinced that a person does not abandon his property merely because he gives it to someone else to store."); *United States v. Eden*, 190 F. App'x 416, 425 (6th Cir. 2006) ("[A] defendant must do more than merely walk away from something as private as a suitcase to support a finding of abandonment.").

Like the placement of a satchel on a windowsill, or of baggage with airport personnel, Ramirez's placement of his jacket on his mother's property does not support an inference of abandonment. To the contrary, Ramirez's conduct indicates a continued interest in keeping the contents of the jacket private. He placed it where he could expect it would be safe, and where he could return to it later.

While Ramirez's actions might support the inference that Ramirez intended to conceal his jacket and its contents from Officer Copeland, they do not evince an intent to discard, leave behind, or otherwise disavow an ownership or privacy interest in the jacket. In the absence of alternative arguments from the Government, we hold that Ramirez did not lose his reasonable expectation of privacy in the jacket or its contents, and that Officer Copeland's search was subject to Fourth Amendment constraints.

B

The dissenting opinion comes to the opposite conclusion based on the principle that an item is abandoned if "discard[ed] . . . in a location that is easily accessible to the public." *Post*, at 13. We agree with the premise, so far as it goes. But Ramirez did not discard his jacket or expose it to the public. He placed it on family property before walking up to Officer Copeland, and he remained nearby throughout his interaction with Copeland. It defies common sense to infer from these acts that Ramirez intended to abandon his jacket.

For much the same reason, authorities expounding the Fourth Amendment protection applicable to garbage are inapplicable. Ramirez did not throw his jacket away. A person who intends for an item to go to the dump does not do the sorts of things that Ramirez did with his jacket. Again, Ramirez put his jacket down after exiting his vehicle and before walking up to Officer Copeland. Ramirez remained only a few paces away from the jacket while speaking with Officer Copeland. And there is no reason to think that Ramirez would not have retrieved the jacket before going in for the night. In short, the record does not support the idea that Ramirez abandoned his jacket in the way that one abandons trash.

No. 22-50042

### III

We reach the same conclusion applying the independent property-rights analysis set forth in *United States v. Jones*, 565 U.S. 400 (2012). In *Jones*, the Supreme Court held that, separate and apart from the *Katz* analysis, the Fourth Amendment must "at a minimum" restrict "physical intrusion[s that] would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." *Id.* at 404–05. After *Jones*, the Fourth Amendment is understood to protect against "government trespass upon the areas ('persons, houses, papers, and effects') it enumerates" in addition to reasonable expectations of privacy. *Id.* at 406. *See also Florida v. Jardines*, 569 U.S. 1 (2013) (following the approach outlined in *Jones*).

The Government does not dispute that the Fourth Amendment extends to protect a person's clothing. *Cf. Jones*, 565 U.S. at 404 (suggesting an expansive understanding of the term "effects" in deeming it "beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment"). *See also United States v. Edwards*, 415 U.S. 800, 805 (1974) (describing prisoner's clothing as "the effects in his immediate possession"); *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 320 (1967) (Douglas J., concurring) (observing that "[a]rticles of clothing are covered [by the text of the Fourth Amendment] as well as papers"). Instead, the Government maintains that Ramirez forfeited his property interest in his jacket when he tossed it over his mother's fence and walked away.

We are unaware of any cases expounding on the interplay between abandonment and *Jones*'s property-rights rubric. Nevertheless, the method prescribed by *Jones* is clear: the Government's position must rise or fall according to its consistency with the longstanding common law property rights that the Fourth Amendment was originally understood to protect. *Cf.*

9

*Richmond*, 915 F.3d at 358 ("[I]n concluding that attaching a GPS to the exterior of a vehicle was a trespass, *Jones* relied on its reading of the common law of trespass as it existed in 1791 when the Fourth Amendment was ratified.").

Courts through both ratification periods treated an owner's intent as the central question in claims of abandonment.[4]  Comment, Laid, Mislaid, and Abandoned Property, 8 Fordham L. Rev. 222, 222 (1939).  *See also* 2 William Blackstone, Commentaries 6 ("Property, both in lands and moveables, being thus originally acquired by the first taker, which taking amounts to a declaration that he intends to appropriate the thing to his own use, it remains in him, by the principles of universal law, till such time as he does some other act which shews and intention to abandon it.").  So, coincidentally—or perhaps not—it turns out that evidence of intent also plays the starring role in questions of abandonment under *Jones*'s property-rights analysis.  *Cf. Jardines*, 569 U.S. at 14 (2013) (Kagan, J., concurring) (observing that shared intuitions about the privacy one can reasonably expect often originate in property law).

Moreover, absent other evidence, the location in which an item had been left was treated as dispositive evidence of intent in common law abandonment claims.  The case of *Livermore v. White*, 74 Me. 452 (1883) is instructive.  There the owner of a tannery discovered a large quantity of animal skins that had been placed in a tanning vat decades earlier.  In holding

---

[4] There is ongoing debate over the relevant historical period for determining the original meaning of enumerated rights incorporated against the states by the Fourteenth Amendment—that is, whether they should be determined according to prevailing understandings when those rights were originally ratified in 1791 or when the Fourteenth Amendment was ratified in 1868.  *N.Y. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2138 (2022).  Like the Court in *Bruen*, we need not resolve this debate because the relevant property law principles were consistent through both ratification periods.

that the skins still belonged to the tannery's previous owner, the Supreme Court explained that proof of abandonment requires showing both "the intention to abandon and the external act by which the intention is carried into effect." *Id.* at 455. The placement of the skins in the vat showed the opposite intention, as "the act was one of preservation—the proprietor expending labor upon his property thereby to enhance its value. It was an act which excludes the very idea of abandonment." *Id.*

The same principle is illustrated in the earlier case of *McLaughlin v. Waite*, which held that "[i]f chattels are found secreted in the earth, or elsewhere, the common law presumes the owner placed them there for safety, intending to reclaim them." 5 Wend. 404, 405 (N.Y. 1830). "[I]f," by contrast, "they are found upon the surface of the earth, or in the sea, if no owner appears to claim them, it is presumed they have been intentionally abandoned by the former proprietor." *Id.* at 405–06.

It follows that Ramirez did not abandon his property interest in his jacket by tossing it over his mother's fence. Like the placement of hides in a tanning vat or the secreting-away of goods in the ground, Ramirez's placement of his jacket on family property "excludes the very idea of abandonment." He put it for safekeeping where he knew he could find it again, and where he could trust that strangers—if acting lawfully—would be unable to get at it.

And so, Ramirez's jacket enjoyed Fourth Amendment protection under *Jones*'s property-rights formulation too.

\* \* \*

We hold that Ramirez did not abandon his jacket by tossing it over his mother's fence because he did not thereby manifest an intent to discard it.

No. 22-50042

The Government elected to rely exclusively on its abandonment theory, expressly waiving alternative grounds for affirmance at oral argument.[5]  We therefore VACATE Ramirez's conviction and sentence, as well as the denial of his motion to suppress, and REMAND for further proceedings consistent with this opinion.

_____

[5] At oral argument, JUDGE ELROD had the following exchange with the Government's attorney:

> JUDGE ELROD: "Okay, you've only argued abandonment.  So, if we don't find abandonment, do you lose?

> Counsel:      "Well, if the district court was mistaken, I think it goes back to the district court."

Oral Argument at 31:15–31:26.

JAMES C. HO, *Circuit Judge*, dissenting:

If you discard an item in a location that is easily accessible to the public—for example, on top of a garbage can right next to a public sidewalk—it's only natural for others to presume that you've abandoned that item.

That's just common sense. And that common-sense intuition is reflected in our law. There's no Fourth Amendment violation when a police officer searches an item that has been abandoned in a public area. *See, e.g.,* *California v. Greenwood*, 486 U.S. 35, 41 (1988) ("society would not accept as reasonable respondents' claim to an expectation of privacy in trash left for collection in an area accessible to the public"); *United States v. Compton*, 704 F.2d 739, 741 (5th Cir. 1983) ("Compton has no standing to contest the seizure of the drugs from the trash, having abandoned" it by "toss[ing]" it "into the trash").

The facts here are undisputed: Albert Ramirez tossed his jacket onto a garbage can right next to a public sidewalk.

And that's abandonment under our longstanding precedents. Ramirez "was just like the bank robber who having a gun, finds himself pursued, and in his hope of escaping detection throws the gun into a yard where, if it is not picked up he might retrieve it." *United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978). "Such conduct is *transparently an abandonment* of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition." *Id.* (emphasis added). And that act of abandonment is fatal to a claim under the Fourth Amendment, because "'[o]ne has no standing to complain of a search or seizure of property he has voluntarily abandoned.'" *Id.* (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)). Accordingly, I would affirm.

## I.

"It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Greenwood*, 486 U.S. at 40.  So there is no "expectation of privacy," and thus no Fourth Amendment protection, when you leave trash "*in an area accessible to the public.*"  *Id.* at 41 (emphasis added).

As the Court further explained, this conclusion was "reinforced by the unanimous rejection of similar claims by the Federal Courts of Appeals." *Id.*  For example, the Court cited *United States v. Kramer*, 711 F.2d 789 (7th Cir. 1983).  The court there observed that "the special protection the Fourth Amendment accords . . . does not extend to . . . discarded garbage." *Id.* at 792.  And that was so even where accessing the garbage required "the police to trespass a few feet upon the outer edge of his front yard either by reaching across the fence into the air space above the yard or by stepping across the fence onto the yard." *Id.* at 794.

Numerous other circuit precedents likewise hold that there's no Fourth Amendment protection for garbage left on private property in a manner reasonably accessible to the public.  *See*, *e.g.*, *United States v. Segura-Baltazar*, 448 F.3d 1281, 1288 (11th Cir. 2006) ("Even though the trash was located on Segura-Baltazar's property, near his garage, there was no reasonable expectation of privacy because the trash was sufficiently exposed to the public."); *id.* ("[T]here was testimony that the trash near the curb was three to six feet from the sidewalk, and fifty-five to sixty-five feet from the house. . . . Regardless of the exact distance, however, the facts we find most relevant and persuasive are that the garbage was plainly visible and accessible from the street."); *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999) ("it is difficult to imagine anyone using an area in which garbage was regularly

deposited for the intimate activities of the home," including garbage bags left on top of a trailer parked in a yard accessible from public alley); *United States v. Redmon*, 138 F.3d 1109, 1113 (7th Cir. 1998) (en banc) (applying *Greenwood* "in the present case even though it is not strictly a curbside collection," because the defendant "chose the front of the joint garage on the shared driveway-sidewalk"); *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992) (applying *Greenwood* "even assuming that the garbage cans were within the curtilage," because "the garbage was readily accessible to the public"); *United States v. Wilkinson*, 926 F.2d 22, 27 (1st Cir. 1991) (applying *Greenwood* even where garbage was left on "lawn next to the curb," rather than "on the curb itself").

## II.

The majority "agree[s] with the premise" that "an item is abandoned if discarded in a location that is easily accessible to the public." *Ante*, at 8 (cleaned up).

And that's exactly what happened here. As the majority acknowledges, Ramirez "toss[ed] his jacket over the fence into his mother's yard and onto the back corner of a closed trash bin." *Id.* at 2. So Ramirez threw his jacket in an area "easily accessible to the public"—as demonstrated by the fact that the jacket was subsequently picked up by one of the officers on the scene.

Nevertheless, the majority contends that Ramirez did not abandon the jacket because (1) he "remained only a few paces away from the jacket while speaking with" the officers on the scene, and (2) "there is no reason to think that Ramirez would not have retrieved the jacket before going in for the night." *Id.* at 8.

But remaining "a few paces away" while speaking with law enforcement is not inconsistent with abandonment. We've repeatedly found

abandonment despite the fact that the defendant remained in close proximity to the abandoned item. *See*, *e.g.*, *United States v. Thomas*, 12 F.3d 1350, 1366–67 (5th Cir. 1994); *United States v. Canady*, 615 F.2d 694, 697 (5th Cir. 1980).

Nor does one's hope to re-acquire the abandoned item alter the conclusion that the item has indeed been abandoned. *See*, *e.g.*, *Williams*, 569 F.2d at 826 (defendant's "hope of re-acquisition" does not alter finding of abandonment).

I respectfully dissent.